UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| Matthew J. Curran and Eileen Curran, <br><br>　　　　　Plaintiffs <br><br>v. <br><br>WC Acquisition Corp. d/b/a Wildcat Mountain Ski Area, <br><br>　　　　　Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT AND JURY TRIAL DEMAND

### PARTIES

1. Plaintiff Matthew J. Curran is an individual residing at 1480 Centre Street, Roslindale, Massachusetts 02131.

2. Plaintiff Eileen Curran is an individual residing at 1480 Centre Street, Roslindale, Massachusetts 02131.

3. Defendant WC Acquisition Corp. d/b/a Wildcat Mountain Ski Area is a New Hampshire corporation with a principal place of business at 1709 Hidden Valley Drive, Wildwood, Missouri 63025.

### JURISDICTION AND VENUE

4. This lawsuit involves a claim for compensation arising out of personal injuries sustained at the defendant's property located on Route 16 between the towns of Jackson and Gorham in the State of New Hampshire.

1

5.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.      Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2) because the property at which the injury occurred is located within the judicial district.

## FACTS

7.      On July 26, 2019, the plaintiff, Matthew J. Curran, age 81, was a guest visitor at the Wildcat Mountain Ski Area.

8.      At all relevant times the Wildcat Mountain Ski Area was owned, operated, controlled, inspected and maintained by the defendant, WC Acquisition Corp. d/b/a Wildcat Mountain Ski Area.

9.      Mr. Curran, his wife, Eileen Curran, and other family members rode the Wildcat Tram to the top of the mountain to enjoy the scenic views as advertised by the defendant.

10.      After the tram ride, Mr. Curran decided to rest on a bench which had been placed by the defendants next to the ground level rear lodge entrance for use by visitors to the defendant's property.

11.      Mr. Curran sat on the bench in the exercise of reasonable care and with the expectation that the bench was safe and suitable for its intended purpose.

12.      Unknown to Mr. Curran, the bench, which was constructed out of used snowboards, was defective in its design and construction rendering it unfit and unreasonably dangerous for its intended purpose.  In addition, the bench was not secured in any manner which further compounded its defective condition by making it highly unstable for use by unsuspecting visitors such as Mr. Curran.

13. Immediately after Mr. Curran sat down, the bench tipped over causing him to be thrown to the ground.

14. Mr. Curran instantly experienced severe and debilitating pain which rendered him unable to stand or walk.

15. Mr. Curran's wife of 53 years, Eileen Curran, was present and contemporaneously observed his fall.

16. Mr. Curran was transported by ambulance to Memorial Hospital in North Conway where he was diagnosed with a comminuted intertrochanteric fracture of his proximal left femur.

17. That same day, Mr. Curran was transferred via ambulance to Brigham and Women's Hospital in Boston, Massachusetts for further evaluation.

18. While at Brigham and Women's Hospital, Mr. Curran underwent open reduction and internal fixation of the fracture with Dynamic Hip Screw under general anesthesia.

19. Mr. Curran remained hospitalized for five days prior to being discharged and transferred by ambulance to Hebrew Rehabilitation where he underwent physical therapy and rehabilitative services over the course of two weeks.

20. On August 17, 2019, Mr. Curran was discharged and transported by ambulance to Encompass Rehabilitative Services where he was admitted to a comprehensive acute rehabilitation program which included continuation of physical therapy and further more intensive rehabilitative services over the next ten days.

21. On August 27, 2019, Mr. Curran was finally discharged to home where he continued to receive rehabilitative services until October 24, 2019.

22. The extensive medical care and treatment necessitated by the accident has resulted in medical expenses in excess of $165,000.

23. Mr. Curran endured severe pain and suffering as a result of the fracture, surgery and rehabilitative treatment. He continues to experience pain in his hip, remains impaired in his ability to stand and walk, and now requires the use of a cane.

24. Prior to the accident, Mr. Curran was an active octogenarian who enjoyed walking, engaging in social activities and taking trips with his family. He lived independently and assisted his wife with household chores and errands. As a direct result of his injuries, Mr. Curran is significantly limited in his ability participate in and enjoy the activities that once gave him pleasure. He is no longer able to contribute to the household activities to the same extent he was once able to. His lack of mobility and physical limitations continue to cause him emotional distress.

## **COUNT I – NEGLIGENCE**

25. The plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 24.

26. The defendant owed a non-delegable duty to exercise reasonable care in the ownership, operation, control, inspection and maintenance of its property which it held open to the public, including the plaintiffs.

27. The defendant's duty of care included complying with all applicable safety laws, codes, ordinances, regulations and standards, including but not limited to, compliance with applicable building codes and the Americans with Disabilities Act (ADA), for the safety of its guests and visitors of all ages and abilities. In addition, the defendant owed a duty to warn guests and visitors on its property of the presence of unreasonably unsafe conditions.

28. Wholly unmindful and regardless of its duty of care, the defendant provided and made available for use by its guests and visitors a bench which was defectively designed, constructed and installed, and failed to warn of the unreasonably unsafe condition of the bench.

29. The defendant knew or should have known that the bench which it made available for use by its guests and visitors failed to comply with applicable safety laws, codes, ordinances, regulations and standards, rendering it unfit and unsafe for its intended purpose.

30. The defendant knew or should have known that guests such as the plaintiff would use the bench for its apparent and intended purpose.

31. The defendant knew or should have known that the defective design, construction and installation of the bench gave rise to an unreasonable risk of harm to foreseeable users, including guests and visitors such as Mr. Curran.

32. The defendant's breach of its duty of care was the proximate cause of the injuries and damages sustained by the plaintiffs.

33. The defendant, through its agents and employees, knew that Mr. Curran fell and was injured as a result of attempting to use the bench on July 26, 2019. In addition, subsequent to and shortly after the incident at issue, plaintiff's counsel formally notified the defendant of the accident in writing and requested that the bench be preserved as evidence.

34. The defendant had a legal duty to preserve the bench as it was a crucial piece of evidence related to an injury that occurred on its property.

35. Upon information and belief, the defendant negligently, recklessly or intentionally failed to preserve the bench for inspection, testing and use as evidence in this litigation.

36. The defendant's spoliation of crucial evidence gives rise to an adverse inference that the evidence would have supported the plaintiffs' claims in this litigation.

37. The defendant's negligence in the ownership, operation, control, inspection and maintenance of its property was the direct and proximate result of the accident and resulting injuries and damages to Mr. Curran, including, but not limited to, past and future medical expenses, pain and suffering, mental distress, loss of enjoyment of life and other losses and damages.

## COUNT II – LOSS OF CONSORTIUM

38. The plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 37.

39. The plaintiff, Eileen Curran, is and was at the time of the accident the wife of Matthew Curran.

40. Prior to the accident, Mr. Curran assisted Mrs. Curran with many household chores and errands, participated in social activities with her, accompanied her on trips and otherwise provided her with society, companionship and services.

41. As a direct and proximate result of the accident and ensuing injuries, Mr. Curran has been limited in his ability to provide society, companionship and services to Mrs. Curran.

42. Mrs. Curran is entitled to compensation for the loss of society, companionship and services of Mr. Curran caused by the accident and resulting injuries.

## DEMAND FOR JURY TRIAL

43. The plaintiffs demand a trial by jury on all issues so triable in accordance with Fed. R. Civ. P. 38(a)-(c).

WHEREFORE, the plaintiffs seek the following relief:

A. Trial by jury on all issues so triable;

  B. A spoliation instruction to the jury to the effect that the defendant's failure to preserve crucial evidence gives rise to an inference that the evidence would have supported the plaintiffs' claims;

  C. Judgment against the defendant for damages compensating Matthew Curran for his injuries, pain and suffering, past and future medical expenses, mental distress, loss of enjoyment of life, and all other past, present and future damages;

  D. Judgment against the defendant for damages compensating Eileen Curran for the loss of society, companionship and services of her husband, Matthew Curran;

  E. An award of costs, interest and attorney's fees to the extent permitted by law; and

  F. Such other relief as may be just and equitable.

          Respectfully submitted,

          MATTHEW J. CURRAN AND EILEEN CURRAN

          By Their Attorneys,

          Getman, Schulthess, Steere & Poulin, P.A.

Dated:  December 4, 2020    By: /s/ *Stephen J. Schulthess*
          Stephen J. Schulthess, Esq.
          1838 Elm Street
          Manchester, NH 03104
          (603) 634-4300
          sschulthess@gssp-lawyers.com